**SCHLEIER LAW OFFICES, P.C.**
3101 North Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

Tod F. Schleier, ESQ. #004612
E-mail: tod@schleierlaw.com
Bradley H. Schleier, ESQ. #011696
E-mail: brad@schleierlaw.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RICHARD KAWAR, a married man, | Case No.: CV08-00046-PHX-MHB |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | |
| JPMORGAN CHASE AND CO., a Delaware corporation. | (Jury Trial Demanded) |
| Defendant. | |

　　　Plaintiff, by and through counsel, hereby amends his Complaint against JPMorgan Chase and Co. to include Plaintiff's claims of retaliation and race discrimination and alleges as follows:

　　　1.　　This matter is brought pursuant to 42 U.S.C. §1981 and 42 U.S.C. §2000e *et seq.* as amended ["Title VII"] jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331.

2.     Plaintiff Richard Kawar is a married man currently residing in Maricopa County, State of Arizona.  Plaintiff's parents were both of Middle Eastern descent; therefore, Plaintiff is of Middle Eastern race/origin.

3.     Defendant JPMorgan Chase and Co., (hereinafter "Chase") is a Delaware corporation authorized to do business and doing business in Maricopa County, State of Arizona.

4.     Plaintiff filed a Charge of Discrimination based on national origin discrimination and retaliation with the Equal Employment Opportunity Commission [hereinafter "EEOC"] on or about February 8, 2008.

5.     On or about April 25, 2008 the EEOC issued a Notice of Right to Sue to Plaintiff.

6.     Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under Title VII .

7.     As the unlawful employment practices complained of herein occurred within Maricopa County, venue is proper in this District Court.

8.     Plaintiff Kawar was recruited by Defendant Chase in 2001 and offered a position as a Producing Sales Manager in Phoenix in January 2002.

9.     In April, 2002, Plaintiff left a Branch Manager Position with another company and relocated to Arizona.  Though a Producing Sales Manager, Plaintiff held most of the responsibilities of a Branch manager.

10.     At the time Plaintiff started with Defendant, his branch was only producing $700,000 a month in loans.  Within 1 year of starting with Defendant, Plaintiff was able to increase production to $2 million a month in monthly closing initially and continued to grow production up to nearly $20 million per month in Nov 2006.

11.     By April 2004, Plaintiff was given the title of Branch Manager.  Plaintiff was presented the award of Most Improved Manager and had the highest production per loan officer in units and volume thus qualifying for Leader Club 2004

12.     In 2005, Plaintiff's branch continued to be one of the top producing branches in the company and received the designation of a "Mega Branch".

13.     In early 2006, it was decided that Plaintiff's branch would open a secondary office for sub-prime loans in downtown Phoenix in order to hire more staff.  Plaintiff qualified, once again, for Leader's Club 2006.

14.     In October 2006, Plaintiff interviewed for a new position created for the Phoenix Area, Regional Sales Manager.  Despite managing two offices and having the second highest ranked office in the country, and growing production to nearly $20 million per month Plaintiff was not offered the position.

15.     In December 2006, the newly hired Regional Sales Manager, Todd Heaton met with Plaintiff for an initial one on one and during the meeting, Mr. Heaton asked Plaintiff what nationality he was.  Shortly after, Todd met with Plaintiff and Scott Lewis, Plaintiff's producing sales manager, to discuss future growth strategy.  He then told Plaintiff that his territory would be divided into six (6) new offices.  Mr. Heaton then hired the new Branch

Managers for a total of six Branch Managers in Arizona.  All the Branch Managers other than Plaintiff were Caucasian and not of Middle Eastern origin/descent.

16.     Despite the splitting/reduction of his territory, Plaintiff's Tempe office out produces all offices in Arizona in 2007 and continued to be ranked among the top offices nationally.

17.     In the first or second quarter of 2007, Plaintiff was contacted by an employee whose female subordinate had complained about inappropriate discriminatory treatment by Scott Lewis, a Producing Sales Manager during which time was under Plaintiff Kawar's supervision.

18.     This was not the first complaint of discriminatory behavior against Scott Lewis that had been brought to Plaintiff Kawar's attention.  In fact, Mr. Lewis had been placed on a final warning as a result of his earlier discriminatory conduct.

19.     After being informed of the nature of the discriminatory conduct, Plaintiff Kawar assisted the female subordinate explaining that the appropriate procedure for handling such complaints was that she needed to contact her manager, Todd Heaton, regarding the discriminatory treatment and if she could not reach him she should contact human resources representative about the discriminatory conduct.

20.     Todd Heaton called Plaintiff's cell phone.  Mr. Heaton was irate and cursed at Plaintiff and asked Plaintiff why human resources was involved in the issue regarding Mr. Lewis' conduct.   Plaintiff informed Mr. Heaton that the subordinate had a legitimate complaint of discrimination and that she needed to have human resources involved.

21.     During the Summer of 2007, a mortgage crisis occurred that affected Defendant locally and nationally.  Plaintiff was informed that a decision was made by Defendant to merge the Sub-Prime Division with the Prime Division.

22.     With the merger, three of the six current branch managers in the Sub Prime Group were offered Producing Branch Manager Positions; one of the Branch Managers was terminated for poor performance; one of the Branch Managers voluntarily stepped down to take a loan officer position with the Prime Division.  Plaintiff was offered a position as a non prime loan officer; this non-management position had less salary, compensation, and responsibility than the position that Plaintiff held at the time he was initially hired by Defendant.

23.     The three individuals offered Producing Branch Manager positions all ran offices with lower production than Plaintiff and all had less seniority with Defendant than Plaintiff.  The Branch Manager that quit and the Manager terminated all had lower production than Plaintiff and had less seniority than Plaintiff.

24.     Plaintiff refused to take the non-management loan officer position and was terminated from his employment with Defendant Chase despite being one of the top producers in the Company and having more seniority than the individuals offered Producing Sales Manager positions.

25.     Defendant retained three individuals, Caucasian, of non-Middle Eastern decent, who had lower production and less seniority than Plaintiff for the Producing Branch Manager

positions.    Mr. Lewis was among the individuals retained even though he had inferior performance to Plaintiff, had less seniority, and had engaged in discriminatory conduct.

26.    Defendant failed to retain Plaintiff in a Producing Branch Manager position despite Plaintiff being one of the top producer, having more seniority than the three Caucasian, of non-Middle Eastern decent, and qualified for the Producing Branch Manager position.

27.    Following Plaintiff Kawar's instruction to a female subordinate to report Scott Lewis' misconduct to Todd Heaton or human resources, Defendant did not considered Plaintiff Kawar for a Producing Branch Manager position despite his performance and qualifications. Instead Defendant terminated Plaintiff's employment when Plaintiff refused the non-management loan officer position.

## COUNT ONE
### (VIOLATION OF 42 U.S.C. §1981)

28.    By reference, hereto, Plaintiff hereby incorporates paragraphs 1-28.

29.    Plaintiff and Defendant had a contractual employment relationship.

30.    By virtue of Defendant's conduct, Plaintiff was denied the ability to make, perform, enforce or to enjoy the fruits of a contractual relationship by reason of race, ethnic, or national origin animus when it terminated his employment in violation of 42 U.S.C. §1981.

31.    As a direct and proximate result of Defendant's conduct and violation of Plaintiff's rights as described herein, Plaintiff has been damaged in the form of lost wages and the value of lost benefits to present and into the future.    Additionally, Plaintiff has

suffered significant emotional distress including, but not limited to depression, anxiety, and sleeplessness.

32.     Defendant's conduct was intentional, evil minded, and/or in reckless disregard to the federal rights of Plaintiff and the conduct merits an award of punitive and/or exemplary damages.

33.     Plaintiff is entitled to an award of attorneys' fees for the violation of his civil rights.

## COUNT TWO
## (RACE DISCRIMINATION)

35.     Plaintiff incorporates paragraphs 1 – 34 above.

36.     Title VII prohibits discrimination in the workplace against employees based on their race/national origin.

37.     Defendant discriminated against Plaintiff by not offering Plaintiff a manager position and constructively terminating him due to his race/national origin (Middle Eastern descent)in that Plaintiff was treated differently than other similarly situated, Caucasian, non Middle-Eastern decent employees.

38.     Defendant's failure to retain Plaintiff for employment and treat Plaintiff differently than other similarly-situated Caucasian, not of Middle-Eastern decent employees is a violation of Title VII.

39.     As a direct result of Defendant's conduct, Plaintiff has sustained and continues to sustain damages in the form of lost wages and the value of benefits.

40.     As a direct result of Defendant's unlawful conduct, Plaintiff has sustained emotional distress and anxiety, thereby entitling him to an award of compensatory damages.

41.     Defendant's unlawful conduct was malicious, intentional and with reckless indifference in violation of Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive and exemplary damages.

### COUNT THREE
### (RETALIATION )

42.     Plaintiff incorporates paragraphs 1 – 41 above.

43.      Defendant's failure to place Plaintiff in a Producing Branch Manager position and terminating Plaintiff for refusing a non-management loan officer position following Plaintiff's opposition of Scott Lewis' discriminatory misconduct and having a subordinate report discriminatory conduct is in violation of the anti-retaliation provisions of Title VII.

44.     As a direct and proximate result of Defendant 's unlawful conduct, Plaintiff has sustained damages in the form of lost wages and the value of benefits.

45.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained damages in the form of significant emotional distress, depression, anxiety, and sleeplessness, thereby entitling Plaintiff to an award of compensatory damages.

46.     Defendant's unlawful conduct was malicious and with reckless indifference to Plaintiff's protected rights, and thereby entitled Plaintiff to an award of liquidated damages.

**WHEREFORE**, Plaintiff demands Judgment against Defendant as follows:

1.     For damages in the form of lost wages and the value of lost benefits to be proven at trial;

2.      For general and compensatory damages to be proven at trial for emotional distress, depression, anxiety and sleeplessness;

3.      For attorneys' fees incurred;

4.      For pre-judgment and post-judgment interest;

5.      For punitive and/or exemplary damages;

6.      For liquated damages;

7.      For costs of suit; and

8.      For any other relief the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby requests a jury trial.


DATED this 30th day of May, 2008.

SCHLEIER LAW OFFICES P.C.

s/ Bradley H. Schleier
Bradley H. Schleier
Attorney for Plaintiff