**Quarles & Brady** LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602-229-5200

Attorneys for Defendant
JP Morgan Chase Bank, N.A.

Sandra J. Creta (#018434) screta@quarles.com
Dawn C. Valdivia (#020715) dvaldivi@quarles.com
Marian Zapata-Rossa (#025846) mzapata@quarles.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RICHARD KAWAR,<br><br>             Plaintiff,<br><br>     vs.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>             Defendant. | CASE NO. CV08-0046 PHX DGC<br><br>**DEFENDANT JPMORGAN CHASE BANK'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure Rule 56 and Local Rule 56.1(a), Defendant JP Morgan Chase and Co., improperly named as JPMorgan Chase Bank, NA ("JPMC") respectfully moves this Court for summary judgment dismissing all claims. This Motion is supported by the following Memorandum of Points and Authorities and separate Statement of Facts.

In 2007, a national mortgage crisis occurred that affected JPMC. Due to rising interest rates and mortgage defaults, JPMC, like most financial institutions nationwide, could no longer sustain its non-prime mortgage division. Non-prime (or sub-prime) lending products were utilized for individuals who were unable to qualify for prime loans because of various factors such as credit score, higher loan to value ratio, or sources of income that could be considered. As a result of the non-prime mortgage crisis, JPMC made a business decision to eliminate the non-prime management structures and to consolidate the non-prime sales staff into the existing prime management structure. The

consolidation followed the same process nationwide and was based upon geography, availability, and market opportunity.

Plaintiff Richard Kawar ("Kawar") was working as a Non-Prime Branch Manager in Tempe, Arizona when the crisis hit. Because there was no existing prime branch in Tempe, there was no opportunity for a management position in Tempe. Kawar was offered the choice between accepting a position as a Non-Prime Loan Officer or a severance package. Kawar, who is of Middle Eastern descent, took neither and instead sued JPMC for national origin discrimination and retaliation.

JPMC is entitled to summary judgment on all of Kawar's claims. Kawar cannot Kawar cannot establish a *prima facie* case of discrimination because he cannot show a nexus between the elimination of his position and his national origin. Moreover, JPMC had a legitimate, nondiscriminatory reason for eliminating the separate management structure for non-prime lending and Kawar cannot show that JMPC's legitimate, nondiscriminatory reason is pretextual or somehow unworthy of credence.

Similarly, Kawar cannot establish a *prima facie* case of retaliation because he did not engage in protected activity and he cannot establish a nexus between any alleged protected activity and JPMC's legitimate, non-retaliatory business decision. Additionally, Kawar has failed to show that JPMC's legitimate, non-retaliatory reason for eliminating the non-prime management structure is pretextual.

Finally, Kawar has failed to introduce any evidence that would support a finding of punitive damages. Accordingly, JPMC is entitled to summary judgment on all of Kawar's claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    THE UNDISPUTED FACTS**

JPMC is a global financial services firm engaged in the business of investment banking, consumer financial services, small business and commercial banking, financial transaction processing, asset management, and private equity. [Statement of Facts ("SOF"), ¶ 1.] In 2007, a mortgage crisis, of palpable magnitude, occurred that affected

JPMC locally and nationally. [SOF ¶ 47.] Due to rising interest rates and mortgage defaults, JPMC chose to eliminate the separate management structure for its non-prime mortgage division. [SOF ¶ 48.] Non-prime (or sub-prime) lending products were utilized for individuals who were unable to qualify for prime loans because of various factors such as credit score, higher loan to value ratio, or sources of income that could be considered. [SOF ¶ 4.]

Kawar was working as a Non-Prime Branch Manager in Tempe, Arizona when the crisis hit and, as a result, his position was eliminated. [SOF ¶¶ 3, 83.] He was offered the choice between accepting a position as a Non-Prime Loan Officer or a severance package. [SOF ¶ 68.] Kawar, who is of Middle Eastern descent, took neither and instead sued JPMC for national origin discrimination and retaliation. [SOF, ¶ 69.]

### A. JPMC Hired Kawar in Its Non-Prime Lending Division.

In April 2002, JPMC hired Kawar as a Non-Prime Producing Sales Manager. [SOF ¶ 3.] As a Producing Sales Manager, Kawar managed loan officers and sold non-prime consumer mortgages. [SOF ¶ 5.] In April 2004, Kawar was promoted to Non-Prime Branch Manager and continued to manage a non-prime sales staff, but was no longer responsible for his own production (i.e., he no longer sold mortgages). [SOF ¶ 6.] As a Branch Manager, Kawar reported to Lawrence Bailey, Southwest Divisional Manager for non-prime, who reported to Jim McCraw, National Sales Manager for non-prime. [SOF ¶ 7.] In April 2004, the Tempe Branch was the only branch in Arizona producing non-prime loans. [SOF ¶ 8.] In 2005, the Tempe Branch was a top producing non-prime lending branches in the Company. [SOF ¶ 9.]

### B. JPMC Expanded Non-Prime Lending in Arizona.

In 2006, JPMC expanded non-prime lending in Arizona in an effort to seize market opportunity. [SOF ¶ 14.] As a result, five additional non-prime branches were added in the following locations: Tucson, Ahwatukee, Scottsdale, Phoenix, and the West Valley (located in Glendale, Arizona). [SOF ¶ 15.] Due to the expansion, JPMC needed a Regional Manager to oversee all six branches. [SOF ¶ 16.] In October 2006, Kawar

interviewed for the Regional Sales Manager position, but was not offered the position. [SOF ¶ 17.]

Bailey and McCraw recruited and hired Todd Heaton as the Regional Manager for the Non-Prime Arizona Region reporting to Bailey. [SOF ¶ 18.] Heaton had previously worked as a Regional Manager at Wells Fargo and had almost ten years experience working in non-prime lending. [SOF ¶ 19.] Bailey and McCraw had previously worked with Heaton at Wells Fargo. [SOF ¶ 20.]

In November 2006 Heaton became Kawar's direct supervisor. [SOF ¶ 21.] In January 2007, Heaton met with Kawar in Kawar's office for a scheduled one-on-one meeting during which Heaton asked Kawar "Are you Italian? Are you Mexican? You know, what nationality are you?" [SOF ¶¶ 22, 23.] Kawar told Heaton that he was Jordanian and that his family was from Jordan. [SOF ¶ 24.] Heaton made no other comments regarding Kawar's national origin. [SOF ¶ 25.]

As Regional Manager, Heaton was charged with hiring branch managers for each of the new non-prime offices. [SOF ¶ 26.] In the Spring of 2007, Heaton promoted Scott Lewis, a Sales Manager who had been reporting to Kawar in Tempe, as Non-Prime Branch Manager in Ahwatukee. Heaton hired Lori Webster in Scottsdale, Herb Reynolds in the West Valley, Douglas Koenig in Tucson, and John Nicholson in Phoenix. [SOF ¶ 27.] Kawar continued to manage the Tempe Branch. [SOF ¶ 28.] Webster is a Caucasian female and Koenig, Lewis, Nicholson, and Reynolds are Caucasian males. [SOF ¶ 29.]

**C.      Kawar Notified Human Resources About an Employee Complaint.**

In February 2007, Kawar's assistant, Angelina Merrill, told him that Loan Processor Taylor Chin told her that Lewis called Chin a "cockroach or something along those lines." [SOF ¶ 30.] Kawar found the term offensive, but did not understand it to be gender, age, or race based. He did not believe that the term was being used in a sexually discriminating or harassing way. [SOF ¶ 31.] Kawar told Merrill to report the comment to her manager (Heaton) or to Human Resources. [SOF ¶ 32.] Kawar called Human Resource Manager Michele Cox to notify her as well. [SOF ¶ 33.] Kawar did not notify

Heaton about his conversation with Merrill or Cox. Heaton subsequently learned about the incident from Cox. [SOF ¶ 34.]

Heaton was upset that Kawar did not apprise him of the situation or give him any notice that he had contacted Human Resources. Heaton felt blindsided when Cox called him and he did not have any knowledge about the accusation. [SOF ¶ 35.] On or about February 16, Human Resources investigated Merrill's report regarding the comment allegedly made by Lewis to Chin and ultimately determined that the allegation was meritless. [SOF ¶ 36.]

### D. One of Kawar's Loan Officers Engaged in Misconduct.

On or about February 16, 2007, one of Kawar's loan officers, Justin Cale, violated company policy by creating his own referral contest whereby he offered to pay $50 to prime collectors for business referrals. [SOF ¶ 37.] The Prime Collections Group in Tempe was a group of collectors assigned to work with prime mortgage borrowers who were at risk for default. [SOF ¶ 38.] If the collector was unable to assist the borrower, the collector could refer the borrower to a Non-Prime Loan Officer for assistance. [SOF ¶ 38.]

Although Cale's actions violated company policy and could have jeopardized a significant source of business, Kawar failed to report the incident to his managers or to anyone at JPMC. [SOF ¶ 39.] On or about February 20, 2007, Heaton and Bailey learned about Cale's misconduct. They also learned that the Loan Officers reporting to Kawar were further violating Company policy by spending too much "floor time" with the collectors. [SOF ¶ 40.] Bailey was extremely upset. Bailey called Kawar and told him that Cale's actions could have jeopardized the referral relationship, not only for the Tempe office, but for the entire Company.[1] [SOF ¶ 41.] On February 21, 2007, Kawar received a

---

[1] The other Prime Collections Group operating for JPMC in the United States was located in Columbus, Ohio. [SOF ¶ 42.] Julie Horvath was a Regional Manager in Columbus managing the non-prime sales staff who utilized the Columbus collectors as a referral source. Horvath's group was twice as large as Kawar's group and produced twice as much volume. [SOF ¶ 42.]

written warning for failing to report Cale's misconduct and for the "floor time" violation. [SOF ¶ 43.]

Kawar believed that Bailey overreacted to Cale's misconduct because he was angry with Kawar for reporting the "cockroach" comment to Cox. [SOF ¶ 44.] Kawar believes that Bailey wanted to protect Lewis from further disciplinary action because he wanted to promote Lewis to the Branch Manager position (that he ultimately received). [SOF ¶ 45.] In 2006, Lewis had been issued a written warning for "making an offensive comment to a co-worker." [SOF ¶ 13.]

### E.    The Mortgage Crisis Hit JMPC.

Due to the non-prime mortgage crisis in 2007, caused by rising interest rates and mortgage defaults, JPMC eliminated the management structure for non-prime. [SOF ¶ 48.] The goal was to consolidate, where possible, non-prime managers into the existing prime management structure. [SOF ¶ 49.] Although non-prime lending was a profitable product for JPMC in 2006, that profitability was rapidly decreasing in 2007. Moreover, the volume produced by non-prime lending was insignificant compared to the volume produced by prime lending. [SOF ¶ 10.]

The consolidation followed the same process nationwide and was vetted through JPMC's Human Resources Department. [SOF ¶ 50.] For the Southwest territory, which includes Arizona, Bailey and McCraw reviewed every non-prime position and made initial termination decisions based upon performance. [SOF ¶ 51.] In Arizona, prior to the consolidation, the West Valley Non-Prime Branch Manager (Reynolds) had exhibited poor performance and was placed on a written warning. Thus, his employment was terminated. [SOF ¶ 52.]

After an initial reduction was made based upon performance, Bailey and McCraw took the list of the remaining non-prime employees (managers and loan officers) in their geographic territory to Mike Downing, Senior Vice-President Southwest Division Manager, Retail Mortgage (Prime Lending). Bailey, Heaton, and McCraw recommended that each person be retained if possible because they were all qualified. [SOF ¶¶ 53, 55.]

Bailey and McCraw also asked Downing to find them positions. [SOF ¶ 54.] In Arizona, Downing was presented with finding a position within the prime structure for the following Non-Prime Branch Managers: Koenig, Webster, Nicholson, Kawar, and Lewis. [SOF ¶ 55.] Downing looked at the geographic location of each non-prime and prime branch and made determinations based upon location, availability, and market opportunity. [SOF ¶ 55.]

In Ahwatukee, there was a Prime Area Manager, Jeff Wilde, reporting directly to Downing. [SOF ¶ 64.] Because there was no Sales Manager in Ahwatukee, Downing was able to place Lewis, who was the Non-Prime Branch Manager in Ahwatukee, in a Sales Manager position reporting to Wilde. [SOF ¶ 65.] The responsibilities of a Non-Prime Branch Manager are similar in scope to those of a Prime Sales Manager. [SOF ¶ 61.]

In Phoenix, there were three Area Managers: Sally Branch, Brian Harney, and John Shelly. Because there were no Sales Managers in Phoenix at the time, Downing was able to place Nicholson, who was a Non-Prime Branch Manager in Phoenix, in a Sales Manager position reporting to Sally Branch. [SOF ¶ 65.] Additionally, several of the Loan Officers reporting to Nicholson spoke Spanish, which would be an asset to Sally Branch's operation because it targeted to the Hispanic community. [SOF ¶ 65.]

In Tucson, there was an Area Manager, Darren McElroy. Because there was no Sales Manager in Tucson, Downing was able to place Koenig, who was the Non-Prime Branch Manager in Tucson, in a Sales Manager role reporting to McElroy. [SOF ¶ 66.]

In Scottsdale, there was a Prime Sales Manager, George Benson, reporting directly to Downing. [SOF ¶ 62.] Consequently, Downing did not have a need for another manager at that location and approved that Webster, who was the Non-Prime Branch Manager in Scottsdale, be offered a loan officer position or a severance package. [SOF ¶ 62.] Webster accepted the loan officer position, which is a non-management position with less salary, compensation, and responsibility, and began reporting to Benson instead of Heaton. [SOF ¶ 63.]

There was no Prime Branch in Tempe and, thus, no need for a manager in that office. [SOF ¶ 67.] Downing approved Kawar to be offered a loan officer position or a severance package. Kawar refused both and his employment terminated. [SOF ¶ 68.]

Downing had the loan officers, who remained in Tempe, report directly to Heaton, the former Non-Prime Regional Manager for all of Arizona. Downing made Heaton a Prime Area Manager covering Scottsdale, Gilbert, Mesa, and Tempe because responsibilities for a Prime Area Manager are similar in scope to those of a Non-Prime Regional Manager. [SOF ¶¶ 61, 67.]

In determining which non-prime employees he could retain and in which positions, Downing did not consider non-prime branch production or volume. [SOF ¶ 70.] Similarly, Downing did not consider the performance of the specific Non-Prime Branch Managers; he assumed each was performing adequately. [SOF ¶ 71.] At the time of the consolidation, the Ahwatukee, Phoenix, and Tucson Branches all had lower production than the Tempe Branch. [SOF ¶ 72.] Downing did not consider tenure in making his decision nor did he move or consider moving any Non-Prime Branch Managers to different offices.

Downing made similar decisions in other states within his territory. [SOF ¶ 76.] For example, he did not have a need for a Sales Manager in Oklahoma City, so he approved the Non-Prime Branch Manager located in Oklahoma City to be offered a Loan Officer position or a severance package. [SOF ¶ 76.] Similarly, geography did not permit additional Sales Managers in Shreveport, LA; Houston, TX; Austin, TX; or Jackson, MI. Therefore, as with Kawar and Webster, Downing approved the Non-Prime Branch Managers in those cities to be offered the choice of a Loan Officer position or a severance package. [SOF ¶ 77.]

## II.   **LEGAL ANALYSIS**

### A.   **Summary Judgment Standard**

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conclusory allegations are insufficient to withstand a motion for summary judgment--there is no issue for trial unless the non-moving party comes forward with some evidence demonstrating that a reasonable factfinder could find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted); *see*, *e.g.*, *Thornton v. McClatchy Newspapers*, 292 F.3d 1045 (9th Cir. 2002); *Broussard v. University of California at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999). However, this Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). There are no disputed issues of material fact from which a reasonable fact finder could find that JPMC discriminated or retaliated against Kawar. Similarly, Kawar cannot establish that he is entitled to punitive damages in this case. Accordingly, JPMC is entitled to summary judgment on all counts of Kawar's Complaint.

**B.     Kawar Cannot Establish National Origin Discrimination by JPMC.**

To establish a *prima facie* claim of national origin discrimination, Kawar must establish that: 1) he is a member of a protected class; 2) he was satisfactorily performing his job; 3) he suffered an adverse action; and 4) a nexus exists between the adverse action and his protected status. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). To survive JPMC's motion for summary judgment, Kawar "…must produce *specific* facts [which would support a *prima facie* case] showing that there remains a genuine factual issue for trial." *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050-51 (9th Cir. 1987) (emphasis in original). If Kawar can meet this standard, then the burden shifts to JPMC to produce a legitimate, nondiscriminatory reason for the challenged action. *McDonnell Douglas*, 411 at 802. Once JPMC establishes a nondiscriminatory reason for its actions, the burden shifts back to Kawar to show JPMC's proffered reason is mere pretext. *Id.* at 804.

…

### 1. Kawar Cannot Establish a *Prima Facie* Case of Discrimination.

Kawar cannot establish a *prima facie* case of discrimination because he cannot show a nexus between the elimination of his position and his national origin. To support his claim for discrimination, Kawar relies on the following: (1) Heaton's single inquiry regarding his nationality almost two years prior to the consolidation; (2) Kawar's tenure with JPMC; (3) Kawar's production; (4) the fact that Kawar was the only non-Caucasian in Arizona that was not retained in management position; (5) Kawar's belief that Downing did not like him; (6) another employee's statement that Kawar was not retained because he was not liked and did not "play the game"; (7) the fact that JPMC did not promote Kawar to the Regional Manager position in 2006[2]; (8) JPMC's decision to retain the Columbus group[3]; (9) Heaton's statement to Kawar that he had nothing to worry about; and (10) Kawar's contention that he could have moved to a different office to be a Sales Manager. [SOF, ¶¶ 9, 17, 23, 79, 85, 87-89.] These allegations fail to establish a connection between Kawar's national origin and his termination from employment

Heaton's single inquiry about Kawar's nationality made almost two years before the consolidation is insufficient to establish discriminatory animus. Heaton's question was not derogatory, but, even if it were, this Circuit has long recognized that "[d]erogatory ethnic statements, unless excessive and opprobrious, are insufficient to establish a case of national origin discrimination." *Stallcop*, 820 F.2d at 1050-51 (evidence that supervisor said that plaintiff did not "know the English language" insufficient to establish *prima facie* case of national origin discrimination.) Moreover, stray remarks are insufficient to establish discrimination. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 704 (9th Cir. 1993) (supervisor's comment

---

[2] Kawar cannot state an independent claim for failure to promote because that claim is time barred. A plaintiff must file a discrimination charge with the EEOC within 300 days after the alleged violation. 42 U.S.C.A. § 2000e-5(e)(1). Heaton was hired for the Regional Sales Manager position in or about November 2006. [SOF.] Kawar filed his charge of discrimination on February 8, 2008, well over 300 days after the alleged discriminatory action.

[3] Horvath, the Columbus Regional Manager, and the Branch Managers reporting to her retained were in their capacities following the consolidation.

that "we don't necessarily like gray hair" and vice president's comment "[w]e don't want unpromotable fifty-year olds around," insufficient to establish *prima facie* case of age discrimination). *See also Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314-16 (6th Cir. 1989) ("single, isolated discriminatory comment" by plaintiff's immediate supervisor insufficient to trigger burden shift or to avoid summary judgment).

Even if Heaton's question was motivated by discriminatory animus (and it was not), Kawar cannot show a nexus between Heaton's question and the termination of his employment. The undisputed evidence shows that Heaton was not involved in the decision to eliminate non-prime management. Likewise, Heaton did not make any decisions regarding availability and opportunity for non-prime managers within the prime structure. Heaton did not decide who should be offered management positions and who should be offered loan officer positions--these decisions were made by Downing, with no participation from Heaton. Because there is no connection (not even a temporal connection) between the allegedly discriminatory remark and the termination of Kawar's employment, Kawar cannot establish a *prima facie* case of discrimination and JPMC is entitled to summary judgment.

For example, in *Vasquez v. County of Los Angeles*, the plaintiff offered evidence of remarks made by a superior that plaintiff had a "typical Hispanic macho attitude," and "Hispanics do good in the field." *Vasquez*, 349 F.3d at 638. The Ninth Circuit held that the plaintiff failed to establish a nexus between the remarks and the employment decisions because the superior who made the remarks was not the decision-maker and the plaintiff offered no evidence of discriminatory remarks made by the decision-maker. *Id.* at 640. *See also Dehorney v. Bank of Am. Nat'l Trust and Sav. Ass'n*, 879 F.2d 459, 467 (9th Cir. 1989) (assistant auditor's "somewhat ambiguous reference to you people" insufficient because no evidence that assistant auditor, even if harbored racial animus, was responsible for termination). Like the plaintiffs in *Vasquez and Dehorney,* Kawar has failed to present any evidence that the decision-makers harbored any discriminatory animus against him because of his national origin.

Kawar's remaining "evidence" also fails to establish the requisite nexus for a *prima facie* case of national origin discrimination. It is undisputed that, in making his decisions, Downing did not consider tenure, production, or transferring employees to different locations. Kawar admits that failure to consider tenure or production in the decision to consolidate the prime and non-prime management structures has nothing to do with his national origin. [SOF ¶ 77.] Kawar's subjective belief that these factors should have been considered is insufficient to make a showing of discrimination. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029, n. 6 (9th Cir. 2006) (employee needs more than his subjective belief to overcome summary judgment).

Even if it were true, as Kawar claims, that Downing did not like Kawar, there is no evidence that Downing's alleged dislike of Kawar had anything to do with Kawar's national origin. Kawar admits as much in his deposition. [SOF ¶ 86.] Moreover, Kawar has not introduced any evidence to show that Downing even knew that Kawar is Middle Eastern.

Similarly, the fact that Kawar was not promoted to Regional Manager in 2006 fails to establish discrimination because Kawar has not proffered any evidence to show that Bailey or McCraw harbored discriminatory animus towards Kawar's national origin. That Horvath's group was retained is not evidence of discrimination because Downing did not make any decisions relating to the Columbus Group and Kawar has failed to introduce any evidence otherwise. Likewise, Heaton's comment that Kawar had nothing to worry about is not evidence of discrimination. Lastly, the fact that Kawar was the only non-Caucasian Branch Manager who was not retained in a management position does not establish a casual connection between Kawar's national origin and his termination from employment. Indeed, at least five Caucasian Non-Prime Branch Managers within Downing's territory were not retained as managers within the prime structure, but were, like Kawar, offered the option of a Loan Officer position or a severance package.

Kawar has failed to establish a *prima facie* case of discrimination and JPMC is entitled to summary judgment.

## 2. JPMC's Employment Decisions Were Based on Legitimate, NonDiscriminatory Factors and There Is Insufficient Evidence of Pretext.

Even if Kawar could establish a *prima facie* case of national origin discrimination, which he cannot, JPMC has set forth a legitimate reason for the employment decision. Thus, Kawar must show that Defendant's proffered reason is pretextual "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir 2000); *quoting Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "In this Circuit, it is clear that discrimination laws are "not intended as a vehicle for general judicial review of business decisions." *Douglas v. Anderson,* 656 F.2d 528, 535 (9th Cir. 1981).

In order to overcome summary judgment, an employee needs more than his or her own subjective belief that the employer's legitimate, nondiscriminatory reason is pretext or that the employment action was unnecessary or unwarranted. *Cornwell*, 439 F.3d at 1029, n. 6. Nor is an employee's subjective personal judgment of his ability sufficient to raise a genuine issue of material fact. *See Aragon v. Republic Silver State Disposal, Inc.,* 292 F.3d 654, 660 (9th Cir. 2002); *Bradley v. Harcourt, Brace and Company,* 104 F.3d 267, 270 (9th Cir. 1996); *Schuler v. Chronicle Broadcasting Company, Inc.* 793 F.2d 1010 (9th Cir. 1986).

JPMC had a legitimate, nondiscriminatory reason for eliminating the separate management structure for non-prime lending – the rising interest rates and increasing defaults that caused a crisis in the mortgage industry. JPMC also had legitimate, nondiscriminatory reasons for eliminating Kawar's position – geography; there was no prime office in Tempe. The consolidation followed the same process nationwide and was vetted through JPMC's Human Resources Department. [SOF] Kawar has failed to introduce any evidence, other than his own subjective belief, that JPMC's decisions were motivated by a discriminatory reason or that JPMC's proffered explanation is unworthy of credence. Kawar has failed to show that any of the decisions-makers harbored

discriminatory animus toward him because of his national origin. In fact, Kawar cannot show that any of the decision-makers were even aware of his national origin. As previously stated, Kawar cannot establish animus based upon Heaton's single inquiry about his nationality almost two years before the consolidation, and, even if he could, he has failed to introduce any evidence that Heaton was a decision-maker or that he influenced the decision-makers. *See Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) (plaintiff failed to show employer's legitimate business decisions were pretext for gender discrimination because no evidence that employees' comment that "they bring a woman to do a man's job" influenced decision-makers).

Because Kawar has failed to establish that JMPC's legitimate, nondiscriminatory reasons are pretextual or somehow unworthy of credence, JMPC is entitled to summary judgment on Kawar's discrimination claim.

**B.     Kawar Cannot Show that JPMC Retaliated Against Him.**

Retaliation claims under Title VII and § 1981 follow the *McDonnell Douglas* burden shifting approach that requires Kawar to prove: (1) he engaged in protected activity, (2) he suffered an adverse employment decision, and (3) a nexus exists between his activity and the employment decision. *Trent v. Valley Electric Association Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). To show the requisite causal link, Kawar must present sufficient evidence to raise the inference that his protected activity was the likely reason for the adverse action. *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir. 1982). "'Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.'" *Id.* Once Kawar meets this initial burden, it shifts to JMPC to show that the employment decisions were legitimate and non-retaliatory. *Id.* In order to overcome summary judgment, Kawar must show that JMPC's proffered reason is pretext for a retaliatory reason. *Id.* at 797.

Kawar cannot establish a *prima facie* case of retaliation because he did not engage in protected activity and he cannot establish a nexus between any alleged protected activity and JPMC's decision to eliminate the non-prime management structure and

Kawar's position.  Finally, Kawar has failed to show that JPMC's legitimate, non-retaliatory reason is pretextual.

### 1.     Kawar Cannot Establish a *Prima Facie* Case of Retaliation.

Kawar alleges that JPMC retaliated against him for opposing discrimination, i.e. calling Human Resources to report that Lewis had allegedly called Chin a "cockroach." Accordingly, Kawar's retaliation claim is brought pursuant to Title VII's opposition clause, which protects from retaliation an employee "…who has opposed any practice made an unlawful employment practice [under Title VII]."  42 U.S.C. 2000e-3(a).  To satisfy the first element of his *prima facie* case (that Kawar engaged in protected activity), Kawar must show that he had *reasonable belief* that the employment practice he protested was prohibited under Title VII.  *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) ("protection will be accorded whenever the [employee's] opposition is based on a 'reasonable belief' that the employer has engaged in an unlawful employment practice"); *see also Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978). This standard is applied regardless of whether the victim is a third party or the complaining party himself.  *Jurado v. Eleven-Fifty Corp.,* 813 F.2d 1406, 1411 (9th Cir. 1987).

To support his claim of retaliation, Kawar submits the following evidence: (1) he called Cox regarding the "cockroach" comment; and (2) Bailey was angry regarding the Cale incident and issued him a written warning.[4]  [SOF ¶¶, 13, 33, 35, 43, 44.]  Kawar's proffered evidence fails to establish a *prima facie* case of retaliation because he did not engage in protected activity.  Kawar did not believe that he was opposing any discriminatory practice when he called Cox.  It is undisputed that Kawar did not understand Lewis' comment to be based on any discriminatory factors and he called Cox

---

[4] Kawar cannot state an independent claim for the written warning he received in February 2007 because that claim is time barred.  A plaintiff must file a discrimination charge with the EEOC within 300 days after the alleged violation.  42 U.S.C.A. § 2000e-5(e)(1). Kawar filed his charge of discrimination on February 8, 2008, well over 300 days after he received the written warning.

simply because he understood it was required under JMPC's policy.

Even if Kawar could establish that he engaged in protected activity, which he cannot, he has failed to establish a nexus between his call to Cox and the employment decision. In order to prove that a causal link exists between the alleged protected activity and the subsequent adverse action, it is essential for Kawar to show that JPMC was aware that he engaged in the protected activity. *Cohen*, 686 F.2d at 796, *citing Gunther v. County of Washington*, 623 F.2d 1303, 1314 (9th Cir. 1979). Additionally, to withstand summary judgment on his retaliation claim, Kawar must "present evidence from which a reasonable trier of fact could conclude that the [actual decision-makers] who refused to [maintain his employment] were aware that [he] had engaged in protected activity." *Raad v. Fairbanks North Star Borough School District*, 323 F.3d 1185, 1197 (9th Cir. 2003).

Kawar has failed to present any evidence that Downing or Bailey were aware that Kawar had called Cox to report the "cockroach" comment. Similarly, he has failed to present any evidence to show a nexus between his call to Cox and the decisions to eliminate non-prime management and, consequently, his position. Without such evidence, summary judgment must be granted in favor of JMPC on Kawar's retaliation claim.

### 2. JPMC's Employment Decisions Were Based on Legitimate, Non-Retaliatory Factors and There Is Insufficient Evidence of Pretext.

JPMC's had legitimate, non-retaliatory reasons for eliminating Kawar's position. The mortgage industry crisis forced JPCM to eliminate the non-prime management structure, and, thus, Kawar's position. Kawar has failed to introduce any evidence, other than his own subjective belief, that JPMC's decisions were motivated by retaliatory animus. Kawar has failed to show that any of the decisions-makers harbored retaliatory animus toward Kawar. Because Kawar has failed to establish that JMPC's legitimate, non-retaliatory reasons are pretextual or somehow unworthy of credence, JMPC is entitled to summary judgment on Kawar's retaliation claim.

### C. **Kawar Has Failed to Establish that He is Entitled to Punitive Damages.**

Kawar is not entitled to recover punitive damages, which are an "extraordinary

civil remedy" limited to cases involving "the most egregious of wrongs." *Linthicum v. Nationwide Life Ins. Co.*, 158 Ariz. 326, 331, 723 P.2d 675, 680 (1988). Under Arizona law, Kawar is not entitled to this "extraordinary civil remedy" unless he can prove, by clear and convincing evidence that JPMC acted with an "evil mind." *Id.* at 332, 723 P.2d at 681; *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). Mere negligence and recklessness do not satisfy the requirements for a punitive damage award. *Olson v. Walker*, 162 Ariz. 174, 177, 781 P.2d 1015, 1018 (App. 1989). Instead, Kawar must show that JPMC "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578.

Here, Kawar cannot meet the threshold necessary for a punitive damages award. Kawar's claim for discrimination is based upon JPMC's decision to eliminate the non-prime management structure and eliminate Kawar's position due to lack of availability. His claim for retaliation is even more tenuous and relies upon Bailey and Heaton's purported desire to protect Lewis from an adverse action. None of the facts presented by Kawar are sufficient to show an "evil mind" on the part of JPMC, and, therefore, the claim for punitive damages should be summarily dismissed.

## III.   CONCLUSION

Kawar has failed to produce any evidence to support his claims of discrimination and retaliation. There is no evidence to show that JPMC's decisions were based on discriminatory or retaliatory motive. Instead, JPMC's actions in this matter were governed by legitimate business reasons, primarily resulting from the impact of the mortgage crisis and the resulting availability and opportunity within the existing prime management structure. Moreover, Kawar has not produced any evidence entitling him to punitive damages. Based on these undisputed facts, JPMC respectfully submits that this Court grant summary judgment in its favor and dismiss this lawsuit with prejudice.

RESPECTFULLY SUBMITTED this 27th day of February, 2009.

|   |   |
|---|---|
| 1 | QUARLES & BRADY LLP |
| 2 |   |
| 3 | By /s/Dawn C. Valdivia<br>    Dawn C. Valdivia |
| 4 |   |

I hereby certify that on the 27th day of February, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF Systems for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Tod F. Schleier, Esq.
Bradley H. Schleier, Esq.
Schleier Law Offices, P.C.
3101 North Central Avenue
Suite 1090
Phoenix, Arizona 85012

s/Diane Miller

QB\7393916.3

18