**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Kawar, <br><br> Plaintiff, <br><br> vs. <br><br> JPMorgan Chase and Co., a Delaware corporation, <br><br> Defendant. | No. CV-08-0046-PHX-DGC <br><br> **ORDER** |

Plaintiff Richard Kawar has filed a motion for partial summary judgment regarding Defendant's mitigation of damages defense. Dkt. #126. Defendant JP Morgan Chase and Co. (JPMC) has filed a motion for summary judgment on all claims. Dkt. #129. Both motions are fully briefed.[1] For the reasons that follow, the Court will grant Plaintiff's motion for partial summary judgment and grant in part and deny in part Defendant's motion for summary judgment.

**I.  Background.**

Kawar is of Middle Eastern descent. He began working for JPMC in 2002 as Producing Sales Manager in the non-prime lending division. In April of 2004, Kawar was given the title of Branch Manager. During the summer of 2007 a mortgage crisis occurred

---

[1] Plaintiff did not comply with Local Rule 56.1 in objecting to information contained in Defendant's statement of facts. The Court is able rule on the motion after examining the evidence cited by both sides in the briefs and in the separate statements of facts.

1  and JPMC decided to merge its non-prime division with the prime division. At the time there
2  were six Non-Prime Branch Managers, including Kawar. Kawar was the only minority
3  among the six. As a result of the reorganization, JPMC offered three of the six managers
4  positions as Producing Sales Managers, terminated the employment of another manager, and
5  offered Kawar and the remaining manager the option of taking a position as a loan officer
6  or receiving a severance package. Kawar declined the loan officer position and filed a
7  complaint in this Court alleging unlawful discrimination, retaliation, and violation of
8  42 U.S.C. § 1981.

## II. Summary judgment standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Retaliation claim.

Kawar asserts that JPMC retaliated against him when it offered him a loan officer position or severance package instead of a Producing Sales Manager position. According to Kawar, this retaliation occurred in response to a February 16, 2007 call Kawar made to Michelle Cox in Human Resources at JPMC. Kawar made the call to report that employee Teighlor Chin had said fellow manager Scott Lewis called her a "cockroach." Dkt. #136 ¶¶ 49-52.

### A. Legal standard.

Title VII "prohibits retaliation against an employee 'because he has opposed any practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1082 (9th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). A plaintiff makes a prima facie case of unlawful retaliation by producing evidence that he engaged in activity protected by Title VII, that the employer subjected him to a materially adverse action, and that there was a causal link between the protected activity and the adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir. 2004); *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). An action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57 (quotations omitted); *see Ray*, 217 F.3d at 1243 ("an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity"); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004) (same).

The Ninth Circuit "has explained that . . . 'the requisite degree of proof necessary to establish a prima facie case for Title VII on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061-62 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987) ("At the summary judgment stage, the prima facie case need not be proved by a preponderance of the evidence."). If the plaintiff makes a prima facie case, the burden of production shifts to the defendant to present a legitimate, non-retaliatory reason for the adverse employment action. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). If the defendant carries this burden, the plaintiff "must demonstrate a genuine issue of material fact as to whether the reason advanced by the [defendant] was a pretext." *Id*. The plaintiff may do so by presenting either direct evidence or specific and substantial circumstantial evidence that

the defendant's reason was a pretext to retaliate against him. *See Villiarimo*, 281 F.3d at 1062; *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

**B.     Analysis.**

JPMC argues that Kawar cannot establish a prima facie case of retaliation because he did not engage in protected activity and cannot establish a nexus between the alleged protected activity and any adverse employment action. Dkt. #129 at 14. Kawar alleges that he thought the "cockroach" comment was discriminatory. Dkt. ## 135 at 12, 136-5 at 15. In her deposition, Cox stated that her notes reflected that Kawar called her regarding comments made by Lewis to Chin that Kawar believed were "inappropriate slash racial." Dkt. #136-3 at 10. Viewing the evidence in the light most favorable to Kawar, he has established a prima facie case that he engaged in a protected activity.

Kawar has not, however, sufficiently established a nexus between the protected activity and an adverse employment action to survive summary judgment. Kawar must present evidence that "engaging in the protected activity was one of the reasons for [his] firing and that but for such activity [he] would not have been fired." *Villiarimo*, 281 F.3d at 1064-65 (internal quotation marks omitted). Kawar asserts that causation can be inferred from timing alone, but never tells the Court when the adverse employment action took place. It is clear that Kawar reported Lewis's comment to Cox on February 16, 2007. Dkt. # 136 ¶¶ 52-53. It appears that Kawar's employment was terminated sometime in October of 2007. Dkt. ## 128 ¶ 56, 136-2 at 39. Thus, the adverse employment action took place at least seven-and-one-half months after Kawar engaged in the protected activity. This span of time is too great for the Court to infer causation from timing alone, and Kawar has provided no other evidence which demonstrates that his termination was linked to the protected activity. *See Villiarimo*, 281 F.3d at 1065 (citing multiple cases holding that time spans ranging from four months to one-and-one-half years are too long to raise an inference of discrimination).

1    Kawar's remaining evidence is not probative of causation. Kawar asserts that (1) he had more tenure than the managers who were retained, (2) his supervisor was upset that he reported the complaint to human resources rather than to the supervisor first (Dkt. #136-5 at 16), (3) he was written up less than a week after reporting the complaint for an incident that he admits could have jeopardized an important source of referrals at a time when these relationships were more important than ever due to the economic downturn (Dkt. #136-5 at 18), (4) one month after Kawar reported the complaint to HR, his supervisor told a new hire that he would eventually replace Kawar (Dkt. #136-5 at 54), (5) in June of 2007 Kawar's production goals were slightly increased while the goals for Tucson were significantly decreased (Dkt. #136-4 at 30), and (6) two employees were told that Kawar was terminated because he was not liked by Mike Downing, had burned too many bridges, and did not play the political game (Dkt. ## 136-5 at 47, 136-3 at 4). Of all this evidence, only the fact that his supervisor was upset that he reported the complaint to human resources is related to the protected activity. Kawar has not shown, however, that this supervisor played any role in JPMC's decision to deny Kawar a Producing Sales Manager position. The other events, although occurring after the protected activity, are not themselves claimed to be adverse employment actions and are not shown to be related to Kawar's failure to receive a manager position. Moreover, actions taken because Kawar failed to "play the political game" have not been shown to be retaliation for protected activity. Because Kawar has failed to present evidence from which a reasonable jury could conclude that the HR communication was causally connected to the months-later denial of the manager position, summary judgment will be entered on Kawar's retaliation claim.

**IV.    Title VII and Section 1981 claims.**

   **A.    Legal standard.**

The criteria set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), govern Plaintiff's Title VII claim and provide a guide to Plaintiff's claims under section 1981. *Tagupa v. Bd. of Directors*, 633 F.2d 1309, 1312 (9th Cir. 1980); *see also Fonseca v.*

*Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) ("Analysis of an employment discrimination claim under [section] 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case.") (citing *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797-98 (9th Cir. 2003)). Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a). Plaintiff carries the initial burden to establish a prima facie case of race discrimination by showing: (1) that he belongs to a racial minority; (2) that he was qualified for a job for which the employer was seeking applicants; (3) that he was subject to an adverse employment action; and (4) that similarly situated individuals outside his protected class were treated more favorably. *Chuang v. University of California Davis*, 225 F.3d 115, 1123-24 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). In a reduction-in-force case, the plaintiff may establish a prima facie case of unlawful discrimination by demonstrating (1) that he belongs to a protected class, (2) that he was discharged from a job for which he was qualified, and (3) that others not in his protected class were treated more favorably. *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993).

"If the plaintiff establishes a prima facie case, the burden of production – but not persuasion – then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Villiarimo*, 281 F.3d at 1062 (citing *McDonnell Douglas*, 411 U.S. at 802). Once the employer fulfills this burden of production, the "presumption of unlawful discrimination 'simply drops out of the picture.'" *Wallis*, 26 F.3d at 889 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). "This is true even though there has been no assessment of the credibility of [the employer] at this stage." *Id.* at 892 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

If the employer sufficiently articulates a nondiscriminatory reason, the plaintiff "must produce evidence in addition to that which was sufficient for [his] prima facie case in order to rebut the [employer's] showing." *Godwin*, 150 F.3d at 1220 (citing *Wallis*, 26 F.3d at

890). "[T]he plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Villiarimo*, 281 F.3d at 1062 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)); *see Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003); *Burdine*, 450 U.S. at 256.

To establish pretext the plaintiff may also offer "circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Godwin*, 150 F.3d at 1222. Indeed, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000). Thus, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148; *see Raad*, 323 F.3d at 1194; *Chuang*, 225 F.3d at 1127. Evidence of pretext, however, "must be both 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate[.]" *Godwin*, 150 F.3d at 1222 (citations omitted); *see Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003).

**B.     Analysis.**

Kawar has sufficiently established a prima facie case of discrimination under both the *McDonnell Douglas* framework and the *Washington v. Garrett* framework for evaluating a reduction-in-force claim. *See Chuang*, 225 F.3d at 1123-24; *Washington*, 10 F.3d at 1434. It is undisputed that Kawar belongs to a racial minority, that he was qualified for the new Producing Sales Manager position being offered to some of the former Non-Prime Branch Managers, that Kawar was not offered a position as a Producing Sales Manager, and that all individuals who were offered the position were not members of his protected class.

1 Once Kawar has established a prima facie case of discrimination, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *See Villiarimo*, 281 F.3d at 1062. Defendant asserts that Kawar was not able to retain his position as a Non-Prime Branch Manager because of a reduction-in-force in which the separate management structure for non-prime lending was eliminated. Dkt. ## 129 at 13, 128 ¶ 48. Defendant contends that the decision not to offer Kawar a position as a Producing Sales Manager was made based upon the location, availability, and market opportunity of each geographic location. Because there was no Prime Branch in Tempe, there was no need for a manager in that location. Dkt. ## 129 at 13; 128 ¶¶ 55, 65. Because Defendant has articulated a legitimate, nondiscriminatory reason the presumption of unlawful discrimination drops out of the picture. *See Wallis*, 26 F.3d at 889.

Kawar argues that Defendant's proffered reason is unworthy of credence. *See Villiarimo*, 281 F.3d at 1062. Kawar cites the statements of John Nicholson, a former Non-Prime Branch Manager who was offered a Producing Sales Manager position, Carlton Barker, a loan officer for JPMC from 2001 to 2008, Fred Grise, and Tony Richards. Dkt. #136 ¶¶ 100-107. Nicholson stated in his deposition that when he called Heaton because he was concerned about losing his job, Heaton told Nicholson "that's not necessarily true, because Mike Downing doesn't like Rich Kawar" because Kawar "had burned too many bridges." Dkt. #136-5 at 47. Barker stated in his deposition that his new boss, Margo MacLean, told him that one of the reasons that Kawar was no longer with the company was because "he didn't play the political game." Dkt. #136-3 at 4. Kawar stated in his deposition that Grise told him that MacLean said that "Rich wasn't liked . . . Rich didn't play the game, Rich didn't play politics." Dkt. # 136-5 at 5. Finally, Richards stated that when he was hired before the restructuring he was told that he would replace Kawar in approximately 60 to 90 days. Dkt. #136-5 at 54.

When the evidence is construed in the light most favorable to Kawar, Kawar has presented sufficient evidence that the legitimate, non-discriminatory reason proffered by

Defendant is unworthy of credence. This evidence is both sufficiently specific and substantial to overcome Defendant's motion for summary judgment. Four separate individuals stated that either JPMC had already decided to terminate Kawar before the restructuring or that Kawar was terminated because he was not liked and did not play the political game. This testimony directly contradicts the reasoning supplied by Defendant. As discussed above, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *See Reeves*, 530 U.S. at 147. Therefore, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148.

**IV. Mitigation of damages defense.**

Kawar has moved for partial summary judgment on Defendant's mitigation of damages defense. Dkt. #126. Kawar argues that Ninth Circuit law requires that Defendant demonstrate both that there were substantially equivalent jobs available and that Kawar failed to use reasonable diligence in seeking a substantially equivalent job. Dkt #126 at 4 (citing *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1496-97 (9th Cir. 1994)). Kawar contends that Defendant has failed to produce any evidence of the availability of substantially equivalent positions and therefore summary judgment should be granted in his favor. *See Celotex Corp.*, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Defendant argues that it is relieved of the burden of demonstrating that substantially equivalent jobs were available if it can show that Kawar made no effort to find employment. Dkt. #133 at 9-10. Defendant cites no Ninth Circuit law for this proposition. The Ninth Circuit decision in *Odima* places the burden on Defendant to prove both that there were

1 substantially equivalent jobs available and that plaintiff failed to use reasonable diligence in
2 seeking one. *Odima*, 53 F.3d at 1497 (9th Cir. 1995). In *Odima*, the Court noted that
3 Defendant argued that it did not need to present evidence of comparable employment because
4 the plaintiff failed to look for work. The Court first recognized that no Ninth Circuit
5 authority exists for this exception to the general rule and then held that it did not need to
6 reach this issue because the plaintiff had attempted to look for work.

Defendant cites a First Circuit decision which held that a defendant is excused from proving that comparable employment existed in the rare case where an employee has "remained completely idle" following his discharge. *Quint v. A.E. Stanley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999). This case also notes, however, that the Ninth Circuit still requires defendants to prove that comparable employment existed even when an employee was idle. *Id.* In any event, Defendant does not allege that Kawar remained completely idle, but instead characterizes his efforts as "minimal." Dkt. #133 at 3. This Court concludes that Defendant must prove both that comparable employment existed and that Kawar did not use reasonable diligence in seeking comparable employment.

Defendant contends that even if it were required to show that substantially equivalent jobs were available, it can meet this burden. *Id.* at 11. Defendant notes that former Non-Prime Branch Manager Nicholson found employment as a Banking Center Manager after being laid off in March of 2008 and that Kawar's former supervisor, Heaton, found employment as a Branch Manager at Bank of Arizona after being laid off in August of 2008. Dkt. ## 133 at 11; 134-9 at 3; 134-10 at 3-4. In reply, Kawar argues that there is no evidence that these positions were comparable to the branch/sales manager positions held by Kawar. Dkt. #139 at 4.

To mitigate damages, Kawar was not required to "go into another line of work, accept a demotion, or take a demeaning position." *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 683 (9th Cir. 1997). Kawar was not required to accept a similar position which offered a significantly lower salary. *Id.* Defendant has provided no information regarding the salaries paid to

Nicholson or Heaton nor whether these positions were comparable to the Producing Sales Manager position at JPMC. Defendant has therefore failed to make a sufficient showing to establish an essential element of the defense that Kawar failed to mitigate his damages. *See Celotex Corp.*, 477 U.S. at 322.

**IT IS ORDERED:**

1. Plaintiff's motion for partial summary judgment re mitigation of damages defense (Dkt. #126) is **granted**.

2. Defendant's motion for summary judgment (Dkt. #129) is **granted** with respect to the claim for retaliation and **denied** with respect to the claims brought pursuant to Title VII and 42 U.S.C. § 1981.

3. The Court will set a final pretrial conference by separate order.

DATED this 16th day of June, 2009.

David G. Campbell
United States District Judge